## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK A. KOLAKOWSKI, | ) | |
| | ) | No. 2:21-cv-574 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Judge Robert J. Colville |
| | ) | |
| THE WASHINGTON HOSPITAL D/B/A | ) | |
| WASHINGTON HEALTH SYSTEM, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

Robert J. Colville, United States District Judge

Before the Court is the Motion for Summary Judgment (ECF No. 42) filed by Defendant Washington Hospital d/b/a Washington Health System ("WHS" or "Defendant"). Defendant seeks summary judgment on all the remaining claims (Counts I, III, IV, and VI) set forth in the Complaint (ECF No. 1) filed by Plaintiff Mark A. Kolakowski. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331. Defendant's Motion has been fully briefed and is ripe for disposition.

### I.      Factual Background & Procedural History

Unless otherwise noted, the following facts are not in dispute:

Plaintiff is an elected Pennsylvania State Constable. ECF No. 1 ¶ 5; ECF No. 51 ¶ 2; ECF No. 54 ¶ 2. Plaintiff applied for employment with Defendant to serve as an officer in Defendant's private police department. *Id.* at 16. On April 28, 2020, Plaintiff was interviewed for this position by Defendant's employees Mike Edgar, Assistant Chief Mark Pompe, and Chief Merrick. ECF No. 1 ¶ 18. Plaintiff was hired by Defendant but was never officially sworn in under 22 Pa. C.S.

1

§ 501 ("Section 501") as a private police officer.  *See generally* ECF No. 1 ¶¶ 30–73; ECF No. 51 ¶ 2; ECF No. 54 ¶ 2.  Section 501 police officers severally possess and exercise all the powers of a police officer in any county in which they may be directed to act by the corporation for which they are appointed, and are authorized to arrest persons for the commission of any offense of cruelty to children or aged persons.  ECF No. 1 at ¶ 15.

On June 4, 2020, Plaintiff attended a firearms qualification test at the Oakdale Police Department with a certified instructor, who, Plaintiff claims and Defendant denies, informed Plaintiff that the qualification was not necessary because Plaintiff was already qualified by way of his existing certifications, but that Defendant required every one of its police officers to take a firearms qualification test so as to obtain favorable liability insurance coverage premiums.  ECF No. 1 ¶¶ 35-38; ECF No. 51 ¶ 13; ECF No. 54 ¶ 13; ECF No. 52 at 25.  Plaintiff was then instructed to report for work on July 3, 2020.  ECF No. 1 ¶ 41.

Plaintiff claims that, in the interim period between his firearms training and first day of work, he spoke with current and former employees of Defendant and learned of several alleged wrongdoings that had occurred at WHS, including:

> [S]upervisors altering police reports in violation of 49 P.S. §§ 4902, 4906(a), 4910, 4911; removing drugs out of a secured evidence or property lockup in violation of 18 P.S. § 4910 (related to tampering with or fabricating physical evidence); 18 P.S. § 5105 (related to the hindering of apprehension or prosecution); Chapter 39 violations (related to theft offenses); maintaining video surveillance in an area used by employees to change in and out of uniform in violation of 18 P.A. §§ 5701 et seq., (related to invasion of privacy); and, 18 P.A. §§ 7501 et seq., (related to recording communications without consent).

*Id.* at 43.

On July 3, 2020, Plaintiff arrived at work and claims that, while waiting for Assistant Chief Pompe to arrive, other of Defendant's employees informed Plaintiff of wrongdoing on the part of Pompe.  *Id.* at 46.  When Pompe arrived, Plaintiff brought up the alleged wrongdoings, including

2

the events of June 4, 2020 and the allegations from Defendant's employees, and an argument between Pompe and Plaintiff followed. *Id.* at 51–62. Pompe ultimately told Plaintiff to not make waves and to keep his mouth shut. *Id.* at 63.

Within three hours of arriving to report for work that same day, Plaintiff left the work premises and left behind his work badge. ECF No. 45-5 at 64; ECF No. 44 ¶ 11; ECF No. 50 ¶ 11. Plaintiff never returned to report for work. *Id.* On July 6, 2020, Defendant's Human Resources department drafted a Payroll Change Sheet for Plaintiff's "Resignation," with the reason given as "walk off the job" on July 3. ECF No. 45-6; ECF No. 44 ¶ 13; ECF No. 50 ¶ 13. On July 7, 2020, Plaintiff returned his work-issued equipment to Defendant. ECF No. 1 ¶ 56. Plaintiff claims that as of July 2020, he has been looking for other employment, and Defendant acknowledges that Plaintiff has submitted applications for other jobs. ECF No. 54-1; ECF No. 51 ¶ 36; ECF No. 54 ¶ 36.

In late July of 2020, Plaintiff received a form letter stating that Plaintiff's employment with Defendant had been terminated and that Defendant had reported Plaintiff to the Pennsylvania Office of Unemployment Compensation. ECF No. 1 ¶ 72. Over the following months, Plaintiff contacted the Washington County District Attorney's Office, the Washington County Detectives, and the Pennsylvania State Police, and also spoke to a local TV news reporter, repeating his misgivings and opinions regarding Defendant. *Id.* ¶ 73.

Sometime in December of 2020, Plaintiff received a letter dated October 30, 2020 (ECF No. 1-2) from Defendant's attorney Phillip Binotto requesting that Plaintiff cease and desist from making certain statements about Defendant, the WHS police department, and Chief Merrick, and further requesting that Plaintiff retract some of those statements. ECF No. 1 ¶ 76; ECF No. 1-2. In his Complaint, Plaintiff asserts that the letter "contained malicious and untruthful allegations of

Plaintiff's wrongdoings and contained numerous misstatements of facts," and that Defendant knew that these statements were false. *Id.* ¶¶ 77, 82.  The letter is addressed to Plaintiff but purports to have been sent to six additional parties, Eugene Vattone, Washington County District Attorney; John Nardi, Secretary PA Constable Association; Barbara McCullough, Vice President of HR at WHS; Bernard Merrick, Chief of Police at WHS; Jeffrey Besong, Chief of Police at Point Park University; and Jennifer Kirschler, WHS counsel.  ECF No. 1-2.  Plaintiff asserts that Defendant sent the letter to the additional parties in a calculated manner to ruin Plaintiff's opportunities of future employment in his employment field of law enforcement, that the letter was published in retaliation for Plaintiff's exercise of his right to free speech and to libel Plaintiff's personal and business reputation, and that Plaintiff's professional reputation has, in fact, been ruined with law enforcement employers and that Plaintiff has been unable to find employment with law enforcement employers following the publication of the letter.  ECF No. 1 ¶ 78–83.

Plaintiff filed his Complaint on April 30, 2021, bringing claims for Retaliation under 42 U.S.C. § 1983, Conspiracy, violations of the Pennsylvania Whistleblower Act, Wrongful Discharge, Injurious Falsehood, and Libel.  On July 12, 2021, Defendant filed a Motion to Dismiss (ECF No. 10), asking the Court to dismiss the Conspiracy, Pennsylvania Whistleblower Act, and Injurious Falsehood claims.  The Court granted in part and denied in part Defendant's Motion to Dismiss, dismissing the Conspiracy and Injurious Falsehood claims.  ECF No. 17.  Thereafter, the Court ordered a discovery schedule, and the parties conducted discovery, including depositions, interrogatories, and exchange of documents.  ECF No. 27; ECF No. 35.  On August 24, 2022, the parties participated in mediation, which was not successful.  ECF No. 32.  On May 30, 2023, Defendant filed a Motion for Summary Judgment (ECF No. 42) along with a Brief in Support (ECF No. 43) and a Concise Statement of Material Facts (ECF No. 44), arguing that no issue of

material facts remains and that Defendant is entitled to judgment as a matter of law.  On June 30, 2023, Plaintiff filed a Response to the Motion (ECF No. 49), along with a Brief in Opposition (ECF No. 53), a Response to Defendant's Concise Statement of Material Facts (ECF No. 50), and a Counter Statement of Material Facts (ECF No. 51).  On July 7, 2023, Defendant filed a Response to Plaintiff's Concise Statement of Material Facts (ECF No. 54).

## II.    Legal Standard

Summary judgment may be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted.  Fed. R. Civ. P. 56(a).  Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

"The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact."  *Bavone v. Primal Vantage Co., Inc.*, No. 2:21cv1260, 2024 WL 756815, at *1 (W.D. Pa. Feb. 21, 2024).  When the moving party carries their burden, the summary judgment "opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Further:

> A non-moving party may not successfully oppose a summary judgment motion by resting upon mere allegations or denials contained in the pleadings, or by simply reiterating those allegations or denials in an affidavit.  *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).  Rather, the non-moving party must offer specific evidence found in the record that contradicts the evidence presented by the movant and indicates that there remain relevant

> factual disputes that must be resolved at trial. *See id.* If the non-moving party does not respond in this manner, the court, when appropriate, shall grant summary judgment. Fed.R.Civ.P. 56(e).

*Mahaven v. Pulaski Twp.*, 139 F. Supp. 2d 663, 664–65 (W.D. Pa. 2001), *aff'd*, 45 F. App'x 155 (3d Cir. 2002); *see also Bavone*, 2024 WL 756815, at *1 ("Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion.").

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998).

The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248.

## III.    Discussion

### A.  Retaliation and Stigma-Plus Under § 1983

Defendant moves for summary judgment on Plaintiff's § 1983 claim, arguing that the facts show that Plaintiff was not deprived of any right and Defendant did not act under the color of law. Defendant's § 1983 claim alleges that his rights under the First Amendment to the United States Constitution were violated in retaliation for his decision to exercise his right to free speech by expressing matters of public concern. 42 U.S.C. § 1983 provides remedies for when a plaintiff's

rights under the Constitution or federal law have been violated. *Kopec v. Tate*, 361 F.3d 772, 775–76 (3d Cir. 2004); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). Therefore, to hold a defendant liable under § 1983, a plaintiff must show that he: (a) suffered the deprivation of a right under the United States Constitution or federal law (b) by a person acting under color of state law. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 119–20 (1992); *Morrow v. Balaski*, 719 F.3d 160, 165–66 (3d Cir. 2013) (citing *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc)).

### i.      Deprivation of a Right

For a claim of retaliation for exercising a First Amendment right, in particular, the plaintiff bears the burden of proving: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)); *see also Springer v. Henry*, 435 F.3d 268, 275 (3d Cir. 2006); *Feldman v. Phila. Hous. Auth.*, 43 F.3d 823, 829 (3d Cir. 1994).

Speech is protected, *inter alia*, when it involves a matter of public concern. *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001). Speech is a matter of public concern when it is "fairly considered as relating to any matter of political, social or other concern to the community." *Id.* Speaking publicly in one's capacity as a private citizen about perceived corruption or indiscretions in law enforcement, for instance, would fall under a matter of public concern, and "the possibility of a First Amendment claim arises." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).

Any adverse action can presumptively be seen as a deterrence to exercising a constitutional right. However, the Court must examine the causal connection between the exercise of a protected right and the adverse action, which can be established in one of two ways: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *Lauren v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

If the requisite causal connection exists, the Court must also consider whether "an adequate justification for treating the employee differently from any other member of the general public" exists, because an entity that is also an employer has a responsibility to ensure efficient and effective working operations and conditions. *Id.* at 418–19. Restrictions on free speech can be enforced when such speech "impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (citing *Pickering v. Board of Educ.*, 391 U.S. 563, 570–73 (1968)).

In the instant case, the Court considers much of Plaintiff's speech respecting his concerns about Defendant to be protected. Information about internal corruption that Plaintiff shared publicly or with individual third parties in the aftermath of the events of July 3, 2020 were provided in Plaintiff's capacity as a private citizen reporting on matters of public concern. However, the internal conversation Plaintiff had with Mr. Pompe, for instance, would more properly be seen as directly related to employment, and any response to that would be justified under the *Pickering* standard.

There are two potentially retaliatory actions in the record.  First, there is Plaintiff's termination from employment with Defendant.  And second, there is the letter dated October 30, 2020 drafted by Defendant's attorney, Phillip Binotto, advising Plaintiff to cease and desist making false, libelous, and slanderous accusations about Defendant.  ECF No. 1-2.  The letter was sent to six additional parties.  *Id.*

### a.  The Termination

The Court finds that, as a matter of law, the termination of Plaintiff's employment with Defendant is not a retaliation.  The factual record establishes that Plaintiff left work early after a confrontation with his superior on July 3, 2020, the first day of his employment, leaving behind his work badge.  Defendant's Human Resources record indicates that on July 6, 2020, a Payroll Change Sheet was drafted for Plaintiff's "Resignation," with the reason given as "walk off the job" on July 3.  ECF No. 45-6.  Plaintiff provides no evidence to verify his "mere allegations or denials," in *Lujan* parlance, that he intended to return to work, despite exhibiting classic signs of resignation.  *Lujan*, 497 U.S. at 888.  On July 7, 2020, Plaintiff returned his work-issued equipment to Defendant.  ECF No. 1 ¶ 56.  He never returned to report for work, and claims to have begun seeking other employment that same month.  Over the months that followed, Plaintiff engaged in the protected activity, contacting multiple parties, including the Washington County District Attorney's Office, the Washington County Detectives, the Pennsylvania State Police, and local news, to report on the grievances he had with Defendant.  *Id.* ¶ 73.  Based on the undisputed order of events described in the factual record, no reasonable jury could find a temporal relationship between Plaintiff's termination and his protected activity or a pattern of antagonism toward Plaintiff.

Instead, it seems that from an objective viewpoint, Plaintiff had voluntarily resigned from his job.  Or, at the very least, Defendant discontinued Plaintiff's payroll in the belief that he had quit.  Plaintiff left his post on July 3 and never returned to work, claiming that he began looking for other employment.  No reasonable jury could conclude from these undisputed facts that Plaintiff believed that his employer expected him to return to the job.  This is also what the documented evidence, the veracity of which Plaintiff does not contest, shows.  Defendant documented Plaintiff's termination and discontinued payroll, as he had left his post.  "Employee resignations are presumptively voluntary." *Schneck v. Saucon Valley Sch. Dist.*, 340 F. Supp. 2d 558, 579 (E.D. Pa. 2004) (citing *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir.1999). They do not give rise to a claim for retaliatory termination.  *Id.*  As such, Defendant has satisfied its burden of showing that the termination was not a response by Defendant to Plaintiff's protected activity, as the supposed retaliation here was a self-inflicted choice by Plaintiff to resign.

While Plaintiff claims that he intended to return to the job if certain grievances had been addressed, and instead it was Defendant who chose to terminate Plaintiff, Plaintiff's employment had been terminated prior to any of his protected actions, which began later than July 6.  As such, Plaintiff cannot establish that this was a response of any kind, let alone an "unusually suggestive" one, as there are no facts establishing, nor does Plaintiff allege, that Defendant's adverse action was predictive of the protected actions Plaintiff would take.  *DeFlaminis*, 480 F.3d at 267.  No reasonable jury could conclude, based on the facts presented, that at the time of Plaintiff's termination on July 6, Defendants knew about Plaintiffs protected activity and that the termination was a retaliation in anticipation of it.

Finally, the undisputed facts indicate that Defendant had other legitimate reasons to terminate Plaintiff, including layers of unprofessionalism, insubordination, and workplace

disruption, all on his first day of work.  Even if Plaintiff can establish that he was terminated by Defendant and that the timeline of events works in his favor, he still could not establish a causal connection, because the facts show that Defendant would have made the decision to terminate Plaintiff's employment even if he had never engaged in protected speech.  *See, e.g.*, *Springer*, 435 F.3d at 275; *see also Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).  Even if Plaintiff had already indicated his intention to take a protected action (something that is not in the factual record), Defendant would have terminated Plaintiff on other legitimate grounds, such as a confrontation with his superior in the workplace and leaving his work post for several weeks.  At summary judgment, the burden is on Plaintiff to present facts showing that Defendant's proffered non-retaliatory reasons for termination are merely pretextual.  Plaintiff has not carried that burden.

  **b.  The Cease-and-Desist Letter**

The Court also finds that the second potentially adverse action, the letter sent to Plaintiff by Mr. Binotto, is likewise not a retaliation.  Within the cease-and-desist letter, there are two possible adverse actions.  First, there is the threat of legal action against Plaintiff, and second, there is Defendant's decision to share the letter with additional parties, raising the specter of libel and defamation.

Threats of adverse actions do not rise to the level of adverse action for retaliation purposes unless the defendant makes good on the threat.  *See Clarkson v. SEPTA*, 700 F. App'x 111, 115 (3d Cir. 2017); *Ilori v. Carnegie Mellon Univ.*, 742 F. Supp. 2d 734, (W.D. Pa. 2010); *Remp v. Alcon Labs., Inc.*, 2016 WL 1161616, at *8 (E.D. Pa. Mar. 24, 2016).

The larger concern for the Court is whether the fact that Defendant's cease-and-desist letter was sent to multiple parties other than Plaintiff amounts to a defamatory and libelous adverse

action designed to harm Plaintiff's reputation and employment prospects in retaliation for exercising a protected right.

The breadth of the First Amendment's protection against retaliation for protected speech does not extend to retaliatory speech that is itself entitled to First Amendment protections. "[W]hen a public official's allegedly retaliatory acts are in the form of speech, the official's own First Amendment speech rights are implicated." *Zaloga v. Borough of Moosic*, 841 F.3d 170, 176 (3d Cir. 2016)). "The retaliatory speech of a public official by itself cannot be violative of a private citizen's First Amendment rights even where it is defamatory." *Noonan v. Kane*, 504 F. Supp. 3d 387 (E.D. Pa. 2020), aff'd, 2022 WL 2702153 (3d Cir. July 12, 2022) (citing *Paul v. Davis*, 424 U.S. 693 (1976)). For a defendant's speech to be retaliatory under § 1983, even speech that is defamatory or libelous, there must be "a threat, coercion, or intimidation, intimating that punishment, sanction, or adverse regulatory action will follow." *Mirabella v. Villard*, 853 F.3d 641, 651 (3d Cir. 2017) (internal quotations omitted). As a matter of law, such a threat cannot exist here, because, as the Court will elaborate upon later in this Memorandum, *infra* Part III(A)(iii), Defendant is not a "public official" or any type of state actor and holds no power over such punishment or regulation.

### ii.    Stigma-Plus

Under the Due Process Clause of the United States Constitution, "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). A plaintiff establishes this right to be heard by showing "'a stigma to his reputation plus deprivation of some additional right or interest.'" *Dee v. Borough of Dunmore*, 549 U.S. 225, 233–34 (3d Cir. 2008) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006)).

"In the public employment context, the 'stigma-plus' test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest." *Hill*, 455 F.3d at 236 (quoting *Codd v. Velger*, 429 U.S. 624, 628 (1977)). "The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'" *Id.*

To establish that a plaintiff has been the victim of "stigma," he must provide evidence that there was a "(1) publication of (2) a substantially and materially false statement that (3) infringed upon the reputation, honor, or integrity of the employee." *Brown v. Montgomery Cnty.*, 470 Fed.Appx. 87, 91 (3d Cir. 2012). To establish that the plaintiff was the victim of more than just stigma, that is, that there was "plus," he must provide evidence that the stigma was inflicted "'in the course of being terminated or constructively discharged.'" *Dee*, 549 F.3d at 234 n. 11 (quoting *Hill*, 455 F.3d at 238). As stigma-plus is a matter of constitutional protection, once again, for liability to attach, the defendant must be a state actor or acting under the color of law.

The stigma-plus claim will be satisfied only if Plaintiff shows that the allegedly retaliatory statements were false. *See Dondero v. Lower Milford Twp.*, 5 F.4th 355, 360–61 (3d Cir. 2021) (finding no stigma where the plaintiff "offer[ed] no evidence suggesting [that the allegedly stigmatizing statements] were false"). The substantive fact-claim in the letter sent by Mr. Binotto that is not an opinion-based assertion is that the following claims by Plaintiff were false:

(1) Plaintiff informed Mr. Besong that Defendant and Mr. Merrick were the subject of a state investigation.

(2) Plaintiff informed Mr. Besong that Mr. Merrick had testified falsely under oath that he had served as the chief of police at Point Park University.

13

(3) Plaintiff contacted Channel 4 News in Pittsburgh and made a false allegation about a

pending lawsuit.

ECF No. 1-2.

On the current record, the Court believes that whether these statements are true or false comes down to a question of credibility between Plaintiff and Defendant, and genuine questions of fact remain unresolved.

However, Plaintiff's stigma-plus claims still does not survive summary judgment because it fails to establish plus, which is satisfied only when the plaintiff has shown that he was discharged. As the Court has noted, *supra* Part III(A)(i)(a), Plaintiff voluntarily resigned his position with Defendant. No reasonable jury could conclude that Plaintiff was discharged, an essential element of stigma-plus.

Further, as a matter of law, stigma-plus cannot exist here because, as the Court will elaborate upon later in this Memorandum, *infra* Part III(A)(iii), Defendant is not a "public official" or any type of state actor and is therefore not governed by the Due Process Clause.

### iii.    Under the Color of Law

Even if Plaintiff can show that he was terminated, retaliated against, and stigmatized, Plaintiff's constitutional claims cannot survive summary judgment because Defendant is not a state actor or acting under the color of law. Because the U.S. Constitution sets limits only on government actions and not actions by private actors, the Supreme Court instructs that for a constitutional claim to survive summary judgment, Defendant must have acted under the color of law. *Collins*, 503 U.S. at 119–20.

Plaintiff asserts that Defendant acted under the color of law. ECF No. 1 at 85; ECF No. 53 at 1. Plaintiff's theory appears to be that because the details of Mr. Binotto's letter were furnished

by Mr. Pompe and Mr. Merrick, who were employed by Defendant as private police officers under Section 501, sending the letter was thereby rendered a state action. Defendant contends that as a private corporation acting of its own accord "with[out] the help of or in concert with state officials," it does not and did act under the color of law at any point when interacting with or allegedly retaliating against Plaintiff. ECF No. 43 at 9–10 (quoting *Robinson v. Fair Acres Geriatric Ctr.*, 842 Fed. Appx. 779, 782 (3d Cir. 2021)).

Liability in § 1983 cases can attach only to defendants who "carry a badge of authority of a [s]tate and represent it in some capacity." *Nat'l Collegiate Athletic Ass'n. v. Tarkanian*, 488 U.S. 179, 191 (1988). In analyzing whether a defendant carries such state authority, a court must focus "on the heart of the state action inquiry, which . . . is to discern if the defendant 'exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Groman v. Twp. of Manalapan*, 47 F.3d 628, 639 n. 17 (3d Cir. 1995) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)).

The Supreme Court has articulated three tests to determine whether a private person or entity is clothed in the authority of the state. There is the "exclusive prerogative" test, under *Rendell-Baker v. Kohn*, which asks whether the private entity was acting upon authorization from the government to do something that was the exclusive prerogative of the state. 457 U.S. 830 (1982). There is the "close nexus" test, under *Jackson v. Metro. Edison Co.*, which asks whether the government is so involved with the particular action taken that such action can fairly be attributed to the state. 419 U.S. 345, 351 (1974). And then there is the "symbiotic relationship" test, under *Burton v. Wilmington Parking Auth.*, which asks whether the state and the defendant are so intertwined that the state "must be recognized as a joint participant in the challenged activity." 365 U.S. 715, 862 (1961).

In the instant case, Defendant is a private corporation, and it is unclear under what legal theory Plaintiff means to attribute Defendant's actions to the state. Plaintiff cannot establish § 1983 liability under the exclusive prerogative test, because the facts do not show, and Plaintiff does not allege, that the particular adverse action Plaintiff complains of was upon authority granted by the state to Defendant and that it was otherwise within the exclusive prerogative of the state.[1] § 1983 liability also cannot attach here under the close nexus test, because regardless of how close the state and Defendant are, no facts have been entered to establish, and Plaintiff does not claim, that the state had anything to do with the particular adverse action taken. § 1983 liability also fails under the symbiotic relationship test, because, as the Third Circuit Court has found, the symbiotic relationship test requires facts specifically showing the state's connection to the particular conduct that gives rise to the cause of action. *Crissman v. Dover Downs Entm't, Inc.*, 289 F.3d 231 (3d Cir. 2002) (finding no state action even though the private entity had received a government monopoly, was required to enforce certain state laws, and was required to seek state approval before filling certain executive positions, and the state shared in the business profits). No facts on the record show that the actions that give rise to Plaintiff's Complaint have any connection to the state whatsoever.

The Court can accept for the sake of the argument (although it makes no such ruling) that the actions taken by officers appointed under Section 501 that are otherwise police actions may fall under the ambit of § 1983 as preempting exclusive prerogative. But that is not the sort of action that Plaintiff alleges was retaliatory. Actions taken by the legal department of a private

---

[1] This is the theory under which Plaintiff seems to be most likely advancing his state action argument. Plaintiff does mention that his protected action was reporting on a "public body" established under Act 501, ECF No. 53 at 13 (referring to 22 Pa. C.S. § 501)), and contends that Mr. Pompe and Mr. Merrick "are employed as Act 501 special police officers for WHS. Act 501 police officers severally possess and exercise all the powers of a police officer in any county in which they may be directed to act by the corporation for which they are appointed, and are authorized to arrest persons for the commission of any offense of cruelty to children or aged persons." *Id.* at 3

corporation, however inappropriate, threatening, or even libelous, are not otherwise police actions and do not become the actions of the state simply because that private corporation is separately authorized by law to have a private police force. *See Untracht v. Fikri*, 454 F. Supp. 2d 289 (W.D. Pa. 2006), aff'd, 249 F. App'x 268 (3d Cir. 2007) (granting summary judgment for defendant UPMC because a private hospital is not a state actor); *Baack v. Rodgers*, 2014 WL 4632380 (E.D. Pa. Sept. 17, 2014) (granting summary judgment for defendant Holy Redeemer Hospital because a private hospital is not a state actor, even if it has a security department). Thus, the factual record shows that Defendant was not acting under the color of law.

Defendant has established that no reasonable jury could find that Defendant, acting under the color of law, retaliated against Plaintiff for exercising a protected right or stigmatized him in the process of termination. As such, there can be no viable liability under § 1983 or stigma-plus, and Defendant is entitled to judgment as a matter of law. As to Count I, the Court will grant summary judgment.

### B. The Remaining Claims

Plaintiff's remaining claims are brought under Pennsylvania state law. "Federal courts are courts of limited jurisdiction." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 102 S. Ct. 2099, 2104 (1982). A district court may decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.A. § 1367(c)(3). The Third Circuit Court has found that when all federal claims are dismissed prior to trial, "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir.2000) (citations omitted). In this case,

those considerations counsel against this Court deciding the remaining state law claims, and the Court will decline to do so.

**IV.    Conclusion**

For the reasons discussed above, the Court will grant Defendant's Motion for Summary Judgment as to Count I of the Complaint.  The remaining state law claims will be dismissed without prejudice to allow Plaintiff to refile in state court.  An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*_____
Robert J. Colville
United States District Judge

DATED: March 28, 2025

cc: All counsel of record

18